UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH ZOHN,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>INVESTMATES REAL ESTATE LLC, IDAN SHITRIT, and KOBY TELYAS,<br><br>　　　　　　　　　　Defendants. | Civil Action No.: 1:21-cv-674<br><br>**COMPLAINT<br>AND JURY DEMAND** |

Plaintiff Sarah Zohn, by and through her undersigned attorneys, Meister Seelig & Fein LLP, as and for her complaint against Defendants Investmates Real Estate LLC ("Investmates"), Idan Shitrit ("Shitrit"), and Koby Telyas ("Telyas," or collectively with Investmates and Shitrit "Defendants"), hereby alleges as follows:

### NATURE OF ACTION

1.　　This action arises out of Defendants' breaches of their fiduciary duties owed to Ms. Zohn, and their failure to account to her, as well as their past breaches and threatened continued breaches, of their obligations owing to Ms. Zohn under the documents governing the relationships between and among the parties in connection with two New York limited liability companies ("LLCs") into which Defendants induced Ms. Zohn to invest.

2.　　The parties created for the purpose of developing and monetizing two real properties located in Brooklyn, New York.  One, a rental property located at 110 Withers Street ("Withers"), which is owned by 110 Withers Street LLC ("Withers LLC"), and the other, a condominium property under development located at 141 Green Street ("Green"), which is owned by 141 Green LLC ("Green LLC").

1

3.      Before investing in the Withers and Green projects with Defendants, Ms. Zohn had previously invested in other projects of theirs, and had thereby developed a relationship of trust and confidence with them upon which she relied when they induced her to invest into, and partner with, Defendants in Withers LLC and Green LLC and the development projects that both deals entailed.

4.      Defendants, induced Ms. Zohn to invest in the two LLCs at issue – and to give them up-front equity in both LLCs with no money of their own out-of-pocket – based on their repeated representations to her that her money would be used to buy two pieces of land for development and Defendants would use their own money to do the development of the land purchased with Ms. Zohn's money.

5.      According to their deal, only after the Defendants fully completed each project, with a certificate of occupancy issued for each building, would Defendants own 50% of the equity in the projects, although as they paid for the construction of each building their equity percentage would increase in stages at certain specific milestones, until they ultimately reached 50% ownership in each LLC upon the issuance of a certificate of occupancy for each building.

6.      A certificate of occupancy has been issued for Withers, but not for Green.

7.      Defendants thus admit that Ms. Zohn currently owns at least a 50% membership interest in Withers LLC and at least a 67% interest in Green LLC, based on the most recent tax returns for those companies, which were prepared by Defendants.

8.      Indeed, although Ms. Zohn is the nominal Managing Member of Withers LLC under the terms of its operating agreement, Defendants are solely in possession of the books and records of both companies, and Defendants have operated them on a day-today basis, from inception to date.

9.    As set forth below, Ms. Zohn has recently learned that contrary to their representations to her when they induced her to invest, aside from nominal out of pocket outlays for each building by Defendants – Ms. Zohn's out-of-pocket investment into each LLC is more than triple the amount Defendants claim to have spent of their own money – Defendants did not use their own money to develop the buildings.

10.    Instead, they saddled the LLCs with construction loans and then sought to force Ms. Zohn to be responsible through what would ultimately be her 50% interest in the LLCs, to repay half those loans herself, even though the loans, economically, were to be 100% Defendants' responsibility based on the representations they made to her when they induced her to invest, as set forth in the relevant deal documents for Withers and Green, and as Defendant Telyas expressly admitted several times, in writing, after Ms. Zohn caught Defendants with their hands in the proverbial cookie jar when they tried to pass the responsibility for the loans onto her.

11.    More specifically, under the terms of the deals, as Defendants described them to her to induce her investment, and as set forth in the documents the parties signed to memorialize the terms of their relationship, Ms. Zohn was to provide to the companies all up-front costs to acquire the properties in question, in exchange for which Defendants, without investing any money of their own, took an immediate up-front "promote;" a 5% interest in Withers LLC and a 7.5% interest in Green LLC.

12.    After the companies purchased the properties with Ms. Zohn's money, Defendants would earn the remainder of their equity in both companies by paying all the costs and expenses to develop the buildings on the two properties.  When the buildings were completed, it was the parties' intention that each of Ms. Zohn on the one hand and Defendants on the other, would own a 50% interest in each company, with the difference between Defendants' initial interests and 50%

3

to vest over time upon Defendants' successful completion of certain specific construction milestones, the final milestone being the issuance of a certificate of occupancy for the buildings. Withers has its certificate of occupancy and is fully tenanted.  Green's certificate of occupancy has not yet issued.

13.     Defendants have failed to disburse Ms. Zohn's profit distributions from the Withers since August 2020, despite due demand by her, and have wrongfully attempted to assess their own liabilities for the construction costs for both Withers and Green to the companies, even though they themselves are solely responsible for such costs; thus effectively and improperly seeking to foist half of the economics associated with such costs upon Ms. Zohn.  Between the two projects, Defendants are thus misappropriating approximately $3 million from Ms. Zohn, plus the profits that they have failed to distribute to her on Withers.

14.     Indeed, when Ms. Zohn first caught Defendants wrongfully attempting to charge her for their construction loan in connection with Withers and notified Defendants, in response Telyas acknowledged and reaffirmed to her, in writing, at least twice, that the loans that Defendants caused the companies to take to fund the construction costs were 100% the economic responsibility of Defendants, not Ms. Zohn.  Yet, Defendants have persisted in their course, thus resulting in this action by Ms. Zohn to protect her interests.

## PARTIES, JURISDICTION AND VENUE

15.     Plaintiff is a United States citizen domiciled in the State of New Hampshire, with her address: 1030 South Street, Portsmouth, New Hampshire, 03801.

16.     Defendant Investmates is a New York limited liability company with its principal place of business located at 134 N 4th Street, Brooklyn, New York 11211.  Upon information and belief, the individual defendants, Telyas and Shitrit, are the sole members of Investmates.

4

17.     Defendant Shitrit is an individual who, upon information and belief, is domiciled in Brooklyn, New York.

18.     Defendant Telyas is an individual who, upon information and belief, is domiciled in New York, New York.

19.     The amount in controversy, and rights at issue in this case, are in an amount that exceeds $75,000, and the parties are not domiciliaries of the same state. Accordingly, diversity jurisdiction exists under 28 U.S.C. § 1332(a)(2) and jurisdiction is proper in this Court.

20.     Defendants reside and/or have their offices in this judicial district. Accordingly, venue and is proper in this Court under 28 U.S.C. § 1391(b)(1).

## **FACTS**

### **Background**

21.     Defendants induced Ms. Zohn to enter into two agreements with Investmates, to develop two real properties in Brooklyn. One was for the development of Withers and the other for the development of Green, a condominium.

22.     The two deals were "cookie cutter" transactions in which the parties were to document the terms of their deal – Ms. Zohn was to get 50% ownership interest for paying the money to buy the properties and Defendants were to get their 50% ownership interest by paying the money to build the buildings – in an Operating Agreement for each company as well as a Development Agreement for each. The parties signed Operating Agreements for both companies, and a Development Agreement for Withers.

23.     The Operating Agreement for Green expressly references a Development Agreement for Green, but the parties never got around to signing the Development Agreement for Green.

24.     Nevertheless, all parties understood that the terms of the unsigned Green Development Agreement were applicable to the Green project, and they always acted accordingly.

25.     For example, Defendants, who were solely responsible for Green LLC's books and records, and for preparing Green LLC's tax returns, have gradually increased their equity percentage in Green, and correspondingly decreased Ms. Zohn's, according to the vesting schedule set forth in the Green Development Agreement.

**The Withers Project**

26.     In August 2014, the parties formed Withers LLC for the purpose of investment in the Withers project.

27.     In August 2014, Withers LLC began operating under the terms of its operating agreement (the "Withers Operating Agreement"), under which Ms. Zohn initially owned 100% of Withers LLC by making a capital contribution to Withers LLC that ultimately totalled approximately $1,580,000, which was used for the acquisition of the Withers Property.[1]   A true and correct copy of the Withers Operating Agreement is attached hereto as Exhibit A.

28.     In August 2014, the parties also entered into a Development and Services Agreement (the "Withers Development Agreement"), which was annexed and incorporated into the Withers Operating Agreement. A true and correct copy of the Withers Operating Agreement is attached hereto as Exhibit B.

29.     Pursuant to the Withers Development Agreement, Investmates would only earn its equity in Withers LLC upon the happening of certain contractually defined vesting events related

---

[1]     Initially, Ms. Zohn owned 56.25% of Withers LLC while non-parties Sarit Bizon and Software Extensions SLU each owned 6.25% and 37.5% respectively. Ms. Zohn subsequently purchased the shares of the non-parties and owned 100% of Withers LLC.

to Defendants' obligations with respect to the construction and development of the Withers Project.

30.     Initially, Investmates was assigned a 5% interest in Withers LLC upon the purchase of the Withers Property.

31.     Investmates did not contribute any cash of its own for its initial 5% ownership equity in Withers.

32.     Ultimately, in accordance with Section 10 of the Withers Development Agreement, Investmates would eventually be assigned a total membership interest of 50% in Withers LLC but only upon the completion of the Withers Project and the issuance of a certificate of occupancy.

33.     Further, when approaching Ms. Zohn to enter into the transactions to purchase Withers, the parties expressly agreed, as set forth in section 9 of the Withers Development Agreement, that:

> Developer [*i.e.,* Investmates] shall pay all fees, costs and expense, including without limitation, architect fees, engineering fees, permit fees, filing fees, demolition costs, construction costs and legal fees (inclusive of fees to prepare and file the condominium offering plan), for the Project.

34.     Investmates secured a total of approximately $2,100,000 in financing in connection with their construction and development obligations pursuant to the Withers Development Agreement and encumbered the Withers Property with that financing.

35.     In breach of their duties to Ms. Zohn, Defendants did not obtain consent or approval from her to encumber the Withers Property with the current mortgage loan.

36.     Although Withers LLC was the obligor under the financing, the parties always agreed that 100% of the economic responsibility to repay that debt belonged to Defendants.

37.     In 2020, the Withers Project was completed and issued a certificate of occupancy, and Defendants increased Investmates' equity in Withers LLC to 50% and reduced Ms. Zohn's to 50%, which is the percentage each currently owns in Withers LLC.

38.     Defendants did not inform Ms. Zohn at that time, or indeed at any time until December 2020, that they increased their interest to 50% and decreased hers accordingly, even though they had not used their own money to construct the Withers building, contrary to their agreement, and even though they intended thereby, effectively, to pass half the cost of the construction financing on to Ms. Zohn through her ownership interest in Withers LLC, contrary to the terms of the parties' agreement.

39.     Withers LLC 2019 tax filings -- which were prepared by Defendants – list that Ms. Zohn and Investmates each own 50% Withers LLC. A true and correct copy of Withers LLC 2019 Form K-1 is attached as Exhibit C.

40.     Withers units became available for rent in February 2020, and the building is now fully tenanted.

41.     Defendants have been managing the day-to-day operations of Withers LLC and have been in sole possession of its books and records since construction began and through today.

42.     Defendants also began making what they called profits distributions to themselves and Ms. Zohn.

43.     However, despite Ms. Zohn's repeated requests in writing, since August 2020, Defendants have failed to provide Ms. Zohn with a complete accounting for Withers LLC, including all income and expenses.

44.     They have also failed to make any distributions to Ms. Zohn since August 2020.

45.     Further, rather than assuming responsibility for their financial obligations pursuant to Section 9 of the Withers Development Agreement, Defendants have actively sought to pass the development and construction costs on to Withers LLC to the detriment of Ms. Zohn.

46.     Defendants have continued with this course of action despite their admitting multiple times that, in fact, the cost of building the Withers Project was solely their own and not that of Ms. Zohn. For example, in an email exchange on June 29, 2020, Ms. Zohn questioned why there was such a large deduction for funds that had been sent to a bank, which Defendants "took off the top" before making 50/50 distributions to Ms. Zohn and Investmates:

Koby Telyas: "The funds are going to our Construction loan bank."

Ms. Zohn: "We never agreed that you will pay your construction loan with my money - did we?"

Koby Telyas: "No, we didn't."

A true and correct copy of the email exchange is attached hereto as Exhibit D.

47.     That same day, Defendant Telyas also sent Ms. Zohn an email confirming that the construction loan belonged to Defendants "100%."   A copy of that email is annexed hereto as Exhibit E.

48.     Defendants have nevertheless insisted that Ms. Zohn, through the company, must be charged with the cost of their loan; thus improperly increasing the expenses charged "to her," by 50% and reducing her profits distributions accordingly.

49.     Since then Defendants have failed and refused to make any profits distributions to Ms. Zohn at all from Withers LLC, even though there are profits to distribute that are rightfully hers, until she accedes to their wrongful and extortionate demands, including that she assume responsibility for their construction loan and almost $600,000 in expenses that they claim they

fronted for the project but which they are seeking to pass on to her membership interests, even though those amounts are chargeable solely to Defendants.

50.     Defendants claim that they have spent approximately $600,000 of their own money on the construction of the Withers building, but have not provided to Ms. Zohn any accounting of their actual out-of-pocket investment, if any, in the project.

51.     Even assuming that their claim is true, and Ms. Zohn does not know that it is, at maximum, Defendants have put up just 27.3% of the approximate $2.2 million in cash that the members invested into the Withers project while Ms. Zohn has put up 72.7% of the cash ($600,000 for Defendants compared to approximately $1.6 million for Ms. Zohn).

**The Green Project**

52.     In May 2016, the parties formed Green LLC for the purpose of investment in Green (the "Green Project").

53.     In August 2017, Green LLC began operating under the terms of its operating agreement (the "Green Operating Agreement"), under which Ms. Zohn initially owned 92.5% and Investmates owned 7.5% of Green LLC.

54.     Ms. Zohn made an initial capital contribution to Green LLC of approximately $2.5 million, which was used for the acquisition of the Green Property. A true and correct copy of the Green Operating Agreement is attached hereto as Exhibit F.

55.     The agreements concerning the Green Project were drafted such that they mirrored those of the Withers Project. As such, the Green Operating Agreement also explicitly references and incorporates another Development Agreement (the "Green Development Agreement"). A true and correct copy of the Green Development Agreement is attached hereto as Exhibit G.

56.     As noted above, the parties never got around to signing the Green Development Agreement.  Nevertheless, they understood and agreed to be bound by its terms, and all parties acted accordingly.

57.     Just like the Withers Development Agreement, the Green Development Agreement also grants Investmates a 50% interest in Green LLC upon completion of the Green Project; i,e, the issuance of a certificate of occupancy for the building.

58.     To date, more than five years after Green LLC was formed, the Green Project has not been completed and no certificate of occupancy has been issued for the building or any of the condominium units in it.

59.      According to Green LLC's 2019 tax filings, which again were prepared solely by Defendants, Ms. Zohn currently owns 67% of Green LLC. A true and correct copy of Green LLC 2019 Form K-1 is attached Exhibit H.

60.     As for the parties' actual current percentage ownership in Green, Defendants claim that they have spent approximately $900,000 of their own money on the construction of the Green building, but have not provided to Ms. Zohn any accounting of their actual out-of-pocket investment, if any, in the project.

61.     Even assuming that their claim is true, and Ms. Zohn does not know that it is, at maximum, Defendants have put up just 26.5% of the approximate $3.4 million in cash that the members invested into the Green project while Ms. Zohn has put up 73.5% of the cash ($900,000 for Defendants compared to approximately $2.5 million for Ms. Zohn).

62.     Additionally, section 3 of the Green Development Agreement provides that:

Developer [*i.e.,* Investmates] shall be responsible to pay off any loans on the Property and to pay for any and all costs related to any financing of the Project and any construction or development of the Project, including but not limited to, materials, contractors, subcontractors, architects, filings, permits, attorneys, etc.

63.     In, or about, May 2018, Defendants secured approximately $3,500,000 in financing in connection with their construction and development obligations pursuant to the Green Development Agreement. These loans were secured by the Green Property.

64.     However, just as with the Withers Project, Defendants have shirked their responsibilities under the Green Development Agreement and Operating Agreement and have attempted to make the development and construction costs the responsibility of Green LLC and ultimately improperly to pass half those costs on to Ms. Zohn.

65.     Indeed, Defendants have refused to fulfill their obligations under the Green Operating Agreement and the Green Development Agreement.

66.     Defendants have recently claimed that the Green construction project that was entrusted solely to their care, for which they are solely financially responsible and which they are contractually obligated to complete, cannot be completed without an additional $500,000 cash infusion, which they refuse to make, even though any failure to complete the Green building exposes Ms. Zohn's investment in the LLC to a risk of complete loss.

67.     Worse still, Defendants have unlawfully attempted to use their own failures and breaches to extort Ms. Zohn, threatening that because of the Green Project's ostensible cash shortage – which they themselves caused on the construction that they have been solely responsible to oversee and fund – they will permit their bank to foreclose on Green, or they will sell the Green building at a loss and dissolve the company unless she accedes to their extortionate demands, thus improperly putting Ms. Zohn's entire investment in Green LLC at risk.

## FIRST CAUSE OF ACTION
### (Breach of the Withers Operating Agreement)

68.     Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

69.     The Withers Operating Agreement is a valid and binding contract.

70.     The Withers Development Agreement is a valid and binding contract, which is incorporated into, and made a part of, the Withers Operating Agreement.

71.     Ms. Zohn has performed all her obligations under the Withers Operating Agreement with respect to its entitlement to receive distributions from the proceeds generated by Withers LLC.

72.     In breach of section 5.1 of the Withers Operating Agreement Defendants have failed to pay Ms. Zohn her requisite distributions of Withers LLC's profits since August 2020.

73.      In breach of section 9 of the Withers Development Agreement, which is referenced made part of the Withers Operating Agreement, Defendants have failed to assume responsibility for the construction and development costs and instead have used Withers LLC monies to pay those costs rather than provide Ms. Zohn with her full distributions.

74.     In breach of sections 7.1 and 7.2 of the Withers Operating Agreement, Defendants have failed to make Withers LLC's books and records available for Ms. Zohn's inspection, despite demand.

75.     As a result of the breaches, Ms. Zohn has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of the Green Operating Agreement)

76.     Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

77.      The Green Operating Agreement is a valid and binding contract.

78.     The Green Development Agreement is a valid and binding contract, which is incorporated into, and made a part of, the Green Operating Agreement.

79.     Ms. Zohn has performed all her obligations under the Green Operating Agreement with respect to its entitlement to receive distributions from the proceeds generated by Green LLC upon its eventual completion.

80.     In breach of section 5.1 of the Green Operating Agreement and section 3 of the Green Development Agreement, which is referenced made part of the Green Operating Agreement, Defendants have failed to assume responsibility of the construction and development costs and instead have used Green LLC monies to pay those costs to the detriment of Ms. Zohn.

81.     In breach of sections 7.1 and 7.2 of the Green Operating Agreement, Defendants have failed to make Green LLC's books and records available for Ms. Zohn's inspection, despite demand.

82.     As a result of the breaches, Ms. Zohn has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty – Withers LLC)

83.     Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

84.     Defendants, who are responsible for managing Withers LLC's day-to-day operations and have sole possession of its books and records, owed and continue to owe fiduciary duties of good faith, the utmost loyalty and care to Withers LLC and Ms. Zohn.

85.     Defendants breached their fiduciary duties by using Withers LLC's resources to satisfy their obligations, as defined by the Withers Development Agreement, concerning the construction and development costs of the Withers Project to the detriment of Ms. Zohn.

86.     Defendants breached their fiduciary duties by failing to pay Ms. Zohn any distributions from the Withers Project since August 2020 as is required by the Withers Operating Agreement.

87.     Such conduct overwhelmingly constitutes self-dealing, willful misconduct, gross negligence and/or material breaches of the Withers Operating Agreement and Withers Development Agreement.

88.     As a result of the breaches, the Ms. Zohn has been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty – Green LLC)**

89.     Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

90.     Investmates, as managing member of Green LLC, owed and continues to owe fiduciary duties of good faith, the utmost loyalty, and care to Green LLC and Ms. Zohn.

91.     Defendants, who are responsible for managing Green LLC's day-to-day operations and have sole possession of its books and records, owed and continue to owe fiduciary duties of good faith, the utmost loyalty and care to Green LLC and Ms. Zohn.

92.    Defendants breached their fiduciary duties by using Green LLC's resources to satisfy their obligations, as defined by the Green Development Agreement, concerning the construction and development costs of the Green Project to the detriment of Ms. Zohn.

93.    Such conduct overwhelmingly constitutes self-dealing, willful misconduct, gross negligence and/or material breaches of the Green Operating Agreement and Green Development Agreement.

94.    As a result of the breaches, the Gurnee Company has been damaged in an amount to be determined at trial.

**FIFTHCAUSE OF ACTION**
**(Breach of Contract – Green Development Agreement)**

95.    Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

96.    Under the terms of the Green Development, Agreement Defendants were obligated to construct the Green building to completion, and to pay all fees, costs and expenses associated with such construction through completion, including without limitation all hard and soft costs, including legal fees and expenses for the condominium plan relating to the building

97.    Defendants have refused to pay the remaining costs to complete the construction and have advised that they will not do so unless and until Ms. Zohn has either agreed to their extortionate demands on Withers, agreed to reallocate the parties' respective capital in the companies or both.

98.    Defendants' conduct constitutes an anticipatory repudiation of their obligations under the Development Agreement and of their fiduciary duties to Ms. Zohn.

99.    To the extent Defendants fail to complete construction as they have threatened to do, Ms. Zohn is threatened with the loss of her entire investment in Green LLC, which Defendants

16

have encumbered with a construction loan mortgage, which cannot be repaid if the building is not completed.

100.    In a foreclosure, or in any distressed sale of the building pre-completion, the building will not generate sufficient funds to repay both the construction lender, which will be paid first as a result of its mortgage lien, and Ms. Zohn, who in that event will be threatened not only with a loss of the profits she reasonably expected to receive from her investment, but also with loss of some or all of her principal investment into the project.

101.    Significantly, only Ms. Zohn, who has $2.5 million invested in Green, unlike Defendants, who have none of their own money in the deal, is at risk from Defendants' breach.

102.    Defendants are therefore liable to Ms. Zohn for the significant profits Ms. Zohn would have received from the project, that Ms. Zohn will lose as a result of their breach, and also for the loss of some or all of Ms. Zohn's $2.5 million investment into the deal.

## SIXTH CAUSE OF ACTION
### (Accounting -- Withers LLC)

103.    Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

104.    Defendants, who are responsible for managing Withers LLC's day-to-day operations and have sole possession of its books and records, owed and continue to owe fiduciary duties of good faith, the utmost loyalty and care to Withers LLC and Ms. Zohn.

105.    Defendants possess superior knowledge and unfettered access to information pertaining to Withers LLC.

106.    Defendants are required to account to Ms. Zohn for, among other things, assets, liabilities, revenues, expenses, and net profits of Withers LLC.

107.     However, in breach of its duties, Defendants have improperly failed to comply with Ms. Zohn's duly issued demands for true and full information concerning the financial affairs of Withers LLC.

108.     Absent judicial relief, Ms. Zohn will not be able to assess the financial condition of Withers LLC.

109.     Ms. Zohn has no adequate remedy at law other than this form of action to have its rights determined as to the matters set forth herein.

110.     Ms. Zohn is entitled to an accounting of Withers LLC.

## SEVENTH CAUSE OF ACTION
### (Accounting -- Green LLC)

111.     Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

112.     Ms. Zohn and Defendants have a fiduciary relationship. Defendants, who are responsible for managing Green LLC's day-to-day operations and have sole possession of its books and records, owed and continue to owe fiduciary duties of good faith, the utmost loyalty and care to Green LLC and Ms. Zohn.

113.     Defendants possess superior knowledge and unfettered access to information pertaining to Green LLC.

114.     Defendants are required to account to Ms. Zohn for, among other things, assets, liabilities, revenues, expenses, and net profits of Green LLC.

115.     However, in breach of its duties, Defendants have improperly failed to comply with Ms. Zohn's duly issued demands for true and full information concerning the financial affairs of Green LLC.

18

116.     Absent judicial relief, Ms. Zohn will not be able to assess the financial condition of Green LLC.

117.     Ms. Zohn has no adequate remedy at law other than this form of action to have its rights determined as to the matters set forth herein.

118.     Ms. Zohn is entitled to an accounting of Green LLC.

## EIGHTH CAUSE OF ACTION
### (Violation of LLC Law § 1102(b) – Withers LLC)

119.     Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

120.     Section 1102(b) of the New York Limited Liability Company Law provides "Any member may, subject to reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at his or her own expense, for any purpose reasonable related to the member's interest as a member, the records referred to in subdivision (a) of this section, any financial statements maintained by the limited liability company for the three most recent fiscal years and other information regarding the affairs of the limited liability company as is just and reasonable."

121.     In violation of Section 1102(b) of the New York Limited Liability Company Law, Defendants have failed to make available for Ms. Zohn's inspection and copying all financial statements maintained by Withers LLC for the most recent fiscal year and other information concerning Withers LLC.

122.     The Court should direct Defendants to provide Ms. Zohn with all records described in Section 1102(b) of the New York Limited Liability Company Law.

### NINTH CAUSE OF ACTION
**(Violation of LLC Law § 1102(b) – Green LLC)**

123.    Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

124.    Section 1102(b) of the New York Limited Liability Company Law provides "Any member may, subject to reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at his or her own expense, for any purpose reasonable related to the member's interest as a member, the records referred to in subdivision (a) of this section, any financial statements maintained by the limited liability company for the three most recent fiscal years and other information regarding the affairs of the limited liability company as is just and reasonable."

125.    In violation of Section 1102(b) of the New York Limited Liability Company Law, Defendants have failed to make available for Ms. Zohn's inspection and copying all financial statements maintained by Withers LLC for the most recent fiscal year and other information concerning Withers LLC.

126.    The Court should direct Defendants to provide Ms. Zohn with all records described in Section 1102(b) of the New York Limited Liability Company Law.

### TENTH CAUSE OF ACTION
**(Declaratory Judgment)**

127.    Ms. Zohn repeats and realleges each and every allegation set forth in the foregoing paragraphs as though set forth fully herein.

128.    The Withers Operating Agreement, Withers Development Agreement, Green Operating Agreement and Green Development Agreement (collectively, the "Agreements") are valid and binding contracts to which Ms. Zohn and Defendants are parties.

129.    Defendants have failed to satisfy their obligations under the Agreements and thus have failed to earn the equity percentages in the LLCs that they claim they own.

130.    Pursuant to the Agreements, after the companies purchased the properties with Ms. Zohn's capital contribution, Defendants would eventually earn their equity in the companies by paying all the costs and expenses to develop the buildings on the two properties.

131.    Specifically, under the terms of the Agreements, Defendants were obligated to complete the Withers Project and the Green Project and to pay all fees, costs and expenses associated with such construction through completion, including without limitation all hard and soft costs, including legal fees and expenses for the development the properties.

132.    The parties have always understood that the economics associated with the construction loans were to be exclusively be borne by Defendants.

133.    However, Defendants have wrongfully attempted to pass along their own liabilities for the construction costs of both the Withers Project and the Green Project to Withers LLC and Green LLC respectively, but nevertheless have taken the position that they earned the equity percentages in each project commensurate with the construction milestone achieved – 50%  in Withers LLC and 33% in Green LLC -- thus effectively and improperly seeking to force Ms. Zohn to assume half of the cost of such development and construction expenses for Withers and 2/3 of those expenses on Green.

134.    Further, Defendants have refused to complete construction on the Green Project and have made it clear that they will refuse to honor their obligations under the Green Development Agreement unless and until Ms. Zohn acquiesces to their demand to reallocate the parties' respective capital in both companies.

135.   To the extent Defendants fail to complete construction as they have threatened to do, Ms. Zohn is threatened with the loss of her entire investment in Green LLC, which Defendants have encumbered with a construction loan mortgage, which cannot be repaid if the building is not completed.

136.   Given Defendants' refusal to honor their obligations, Ms. Zohn, who has personally invested $2.5 million for her share of the Green project and approximately $1.6 million for her share in the Withers Project, is the only party to have fulfilled her obligations under the Agreements.

137.   On the other hand, Defendants seek to make Ms. Zohn responsible what should be Defendants capital contributions to the companies, namely the development and construction costs.

138.   Defendants claim to have paid just $600,000 out of their own pocket towards Withers construction costs.

139.   Ms. Zohn has no knowledge whether they did so, but even if they did, that equates, at best to a 27.3% membership interest in Withers LLC for Defendants

140.    Specifically, the parties invested a total out-of-pocket of $2.2 million in Withers LLC.

141.   As such, Ms. Zohn's total equity in Withers LLC is 72.7% while Defendants' share of Withers LLC is 27.3%.

142.   Defendants claim to have paid just $900,000 out of their own pocket towards Green construction costs.

143.   Ms. Zohn has no knowledge whether they did so, but even if they did, that equates, at best to a 26.5% membership interest in Green LLC for Defendants

144.     Specifically, the parties invested a total out-of-pocket of $3.4 million in Green LLC.

145.     As such, Ms. Zohn's total equity in Withers LLC is 73.5% while Defendants' share of Withers LLC is 26.5%.

146.     Therefore, an actual and justiciable controversy actually exists as to whether: (1) Defendants actually own 27.3% of Withers LLC instead of 50%; and (2) Defendants actually own 26.5% of Green LLC instead of 33%.

147.     A declaration is therefore necessary to resolve the above-described issues.

**WHEREFORE**, Ms. Zohn respectfully requests that the Court enter judgment in her favor and against the Defendants as follows:

(1)     On the First Cause of Action for breach of the Withers Operating Agreement, monetary damages against Defendants, jointly and severally, in an amount to be determined at trial, but at least $2,700,000;

(2)     On the Second Cause of Action for breach of the Green Operating Agreement, monetary damages against Defendants, jointly and severally, in an amount to be determined at trial, but at least $3,500,000;

(3)     On the Third Cause of Action for breach of fiduciary duty in connection with Withers LLC, monetary damages against Defendants, jointly and severally, in an amount to be determined at trial;

(4)     On the Fourth Cause of Action for breach of fiduciary duty in connection with Green LLC, monetary damages against Defendants, jointly and severally, in an amount to be determined at trial;

(5)     On the Fifth Cause of Action for breach of the Green Development Agreement, monetary damages against Defendants, jointly and severally, in an amount to be determined at trial, but at least $4,500,000.

(6)     On the Sixth Cause of Action, compelling Defendants to provide Ms. Zohn an accounting with respect to Withers LLC;

(7)     On the Seventh Cause of Action, compelling Defendants to provide Ms. Zohn an accounting with respect to Green LLC;

(8)     On the Eighth Cause of Action for violation of Section 1102(b) of the New York Limited Liability Law, directing Defendants to provide Ms. Zohn with all records described in such statute in connection with Withers LLC;

(9)     On the Ninth Cause of Action for violation of Section 1102(b) of the New York Limited Liability Law, directing Defendants to provide Ms. Zohn with all records described in such statute in connection with Green LLC;

(10)     On the Tenth Cause declaring, adjudging and decreeing that pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Ms. Zohn owns 72.7% of Withers LLC and 73.5% of Green LLC; and

(11)     Awarding Ms. Zohn her legal fees, costs and expenses herein, plus such other and further relief as the Court may deem just and appropriate.

//

//

//

//

//

24

## **JURY DEMAND**

Ms. Zohn hereby demands a jury on all issues so triable.

Dated: New York, New York
      February 8, 2021

                                  **MEISTER SEELIG & FEIN LLP**

                                   */s/ Jeffrey Schreiber*
                                  By:    Jeffrey Schreiber, Esq.

                                  125 Park Avenue, 7th Floor
                                  New York, New York 10017
                                  Tel: (212) 655-3500
                                  *Attorneys for Plaintiff*